UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI WERLEIN,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | Case No.: 1:14-cv-01383 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF LORI WERLEIN |

Plaintiff Lori Werlein asserts she is entitled disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred when evaluating the medical record and in rejecting the credibility of her subjective complaints. Because substantial evidence supports the decision of the ALJ, the administrative decision is **AFFIRMED**.

## **BACKGROUND**

On April 30, 2011, Plaintiff filed her applications for benefits, in which she alleged disability beginning December 31, 2010. (Doc. 9-3 at 17) The Social Security Administration denied the applications at the initial level on September 27, 2011, and upon reconsideration on February 24, 2012. (*Id.*; Doc. 9-5 at 2-6, 14-16) Plaintiff requested a hearing, and testified before an ALJ on July 10, 2013. (*Id.* at 17, 34) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued

an order denying benefits on April 9, 2013. (*Id.* at 17-26) Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on September 24, 2014. (*Id.* at 7-9) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Medical Evidence**

On April 28, 2011, Plaintiff had an initial therapy session with Rosalba Serrano, an Approved Social Worker, at Golden Valley Health Center. (Doc. 9-8 at 13) Plaintiff described "depressive symptoms" including a depressed mood, irritability, forgetfulness, and low energy. (*Id.*) Plaintiff reported she had closed her business in December, and had to move in with her daughter and family. (*Id.*) In addition, Plaintiff said she was "trying to apply for employment," but became "anxious/ nervous" when going to interviews." (*Id.*) Ms. Serrano recommended that Plaintiff "increase [her] social interaction and outdoor activity." (*Id.*)

Dr. Kamalullah Yusufzie performed a comprehensive physical evaluation on July 28, 2011. (Doc. 9-8 at 60) Dr. Yusufzie reviewed treatment notes that indicated Plaintiff had hypothyroidism and "some kind of behavior problem." (*Id.*) In addition, Plaintiff reported she had "Graves' disease for three to four years." (*Id.*) Plaintiff said "[s]he used to forget things and she used to have her own business . . . but she was bypassing her office without knowing." (*Id.*) Dr. Yusufzie observed that Plaintiff was able to walk without assistance and sit comfortably. (*Id.* at 61) Upon examination, Dr. Yusufzie found no abnormalities, though Plaintiff's eyes were "a little bigger than normal size." (*Id.* at 62) Dr. Yusufzie determined Plaintiff's motor strength was 5/5 in her upper and lower extremities, and her reflexes were intact. (*Id.* at 62-63) Dr. Yusufzie concluded Plaintiff had no limitations with standing, walking, and sitting. (*Id.* at 63) Further, Dr. Yusufzie opined Plaintiff did not have "[l]ifting

and carrying, postural, manipulative, relevant visual, communicative or workplace environmental limitations." (*Id.*)

On August 27, 2011, Dr. Aimee Riffel completed a consultative psychiatric evaluation. (Doc. 9-8 at 64) Dr. Riffel noted Plaintiff reported "[a] chronic history of mood and anxiety symptoms with onset in 2001." (*Id.*) Plaintiff described "a series of multiple losses which resulted in an overall deterioration in her ability to manage symptoms of anxiety and depressed mood which she believe[d] had been present since early childhood." (*Id.*) Plaintiff "also report[ed] the following mental health symptoms: depressed mood, anxiety, poor concentration, panic attacks, loss of interest in pleasurable activities, [a] recent bout of poor memory, difficulty being in crowds, loss of stamina and fatigue, mood swings, sleep problems, mood instability, and social isolation withdrawal." (*Id.* at 65) Plaintiff told Dr. Riffel that she had a history of drinking alcohol and using illicit drugs such as marijuana and cocaine, beginning when she was 13 and continuing through 2009. (*Id.* at 67) She stated she did "not require assistance with dressing, bathing, traveling, or keeping appointments." (*Id.* at 68)

Dr. Riffel observed that Plaintiff's mood was "irritable with congruent affect." (Doc. 9-8 at 67) She found Plaintiff "had a good past memory," and her recent memory "was intact to three objects in five minutes." (*Id.* at 68) Dr. Riffel believed Plaintiff had "fair concentration, and the pace of the examination [was] adequate." (*Id.*) According to Dr. Riffel, Plaintiff's "[m]ental health factors alone would not likely interfere with her ability to complete a normal workday." (*Id.*) Dr. Riffel concluded:

> Ms. Werlein is capable of completing simple and repetitive tasks and would not need additional supervision in the work environment for these types of tasks.
>
> Ms. Werlein would not have difficulty with complex tasks.
>
> Ms. Werlein would not have difficulty dealing with overall stress within the work environment due to mental health factors.

(*Id.* at 69) Further, she opined Plaintiff's "likelihood of recovery [was] fair." (*Id.*)

On August 8, 2011, Plaintiff's THS (thyroid) levels were within the "normal" range. (Doc. 9-10 at 39) On August 11, 2011, Dr. Frankel reviewed the record related to Plaintiff's physical impairments, and found her hyperthyroidism was "controlled." (Doc. 9-8 at 85) Dr. Frankel concluded Plaintiff's alleged physical impairments were not severe. (*Id.*)

On August 18, 2011, Plaintiff had an appointment with Ms. Serrano, who noted she had not

4

seen Plaintiff in two months. (Doc. 9-8 at 96) Plaintiff reported she had a depressed mood, poor concentration, "low energy, lack of interest in doing daily activities, sleep disturbance, and [mood] swings." (*Id.*) In addition, Plaintiff reported she became "upset easily and… [had] physical altercations with family members." (*Id.*)

In September 2011, Plaintiff told Ms. Serrano that she was taking Zoloft, and she had a "happier mood." (Doc. 9-8 at 93) Plaintiff again reported she was irritable and forgetful, had "low energy, lack of interest in doing daily activities,[and] sleep disturbance." (*id.*)

Dr. Davis reviewed the record and completed a case analysis with a psychiatric review technique on September 20, 2011. (Doc. 9-8 at 70-82) Dr. Davis noted Plaintiff reported activities of daily living that had mental "based limits but seemed to be more focused on phy/med issues." (*Id.* at 82) Dr. Davis noted that Plaintiff "may see herself as suffering due to [mental] issues, but the [consultative physician] examined her & opined otherwise." (*Id.*) Dr. Davis believed Plaintiff had mild restrictions in her activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 80) Dr. Davis concluded Plaintiff's mental condition was "Not Severe." (*Id.* at 82)

In September and December 2011, Plaintiff's thyroid levels continued to be within the "normal" range. (Doc. 9-9 at 37-38)

In January 2012, Plaintiff told Ms. Serrano that she "continue[d] to have sleep disturbance, poor concentration, irritable, and mood swings." (Doc. 9-8 at 92) She also reported that she "[h]ad a physical altercation with her sister." (*Id.*)

Dr. Dorothy Millican reviewed the medical record related to Plaintiff's alleged mental impairments on February 22, 2012. (Doc. 9-8 at 101) She noted Plaintiff was treated for symptoms of depression at Golden Valley Health Center. (*Id.*) In addition, Dr. Millican observed:

> [C]laimant has no problems with personal care but does need some reminders to perform them. She is able to cook simple meals and does laundry. She is able to drive and shop. She is able to manage her own finances. She reports difficulty getting along well with others and difficulty following instructions due to a lack of concentration.

(*Id.*) Dr. Millican found Plaintiff's "symptoms appear to be situational," and concluded they were "non-severe." (*Id.*) Accordingly, Dr. Millican affirmed the assessment of Dr. Davis "as written." (*Id.*)

Dr. David Bailey reviewed the record related to Plaintiff's physical impairments on February 23, 2012. (Doc. 9-8 at 102) He found Plaintiff had "significant thyromegaly" in January 2009, but more recent lab reports from December 2009 and April 2011 showed her thyroid levels were "normal." (*Id.*) Dr. Bailey observed that Plaintiff's "head, neck, lungs, heart, abdomen, skin, and neurological exams were all normal." (*Id.*) Further, he noted Plaintiff's "[m]otor strength was 5/5" and her range of motion in her neck, back, and knees was within normal limits. *Id.* Dr. Baily concluded the medical record "[did] not support claimant's reported level of limitations." (*Id.*)

In September and June 2012, Plaintiff's thyroid levels were in the "low" range. (Doc. 9-9 at 34) However, Plaintiff reported in June that she "feels well" and was sleeping well." (*Id.* at 4) In addition, she had lost weight due to exercising. (*Id.*)

**B.     Administrative Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on December 14, 2012. (Doc. 9-3 at 34) Plaintiff reported she graduated high school and attended college for four years, but stopped "one class short of a degree." (*Id.* at 37) She reported she had been self-employed as a security guard for many years, and believed she was unable to work since December 31, 2010. (*Id.* at 37, 51) She believed she was unable to work due to "[t]rouble focusing," pain in her knees with weather changes, difficulty sleeping, and frequent urination. (*Id.* at 38, 49) Plaintiff also reported she had hyperthyroidism, for which she was receiving treatment, and that she was taking medication for a bipolar disorder. (*Id.* at 38, 40)

Plaintiff said her medication for her knee pain helped, and her medication for her bipolar disorder was "[s]ometimes" helpful. (Doc. 9-3 at 40) She did not believe her hypertension and her hyperthyroidism were well controlled with medication. (*Id.* at 40-41) Plaintiff explained her physician had her "on the high dose of thyroid medication and [they] went slowly down and then [Plaintiff] had to go back up to a higher dose." (*Id.* at 41)

She reported that she was able to dress and bathe herself, prepare meals in the microwave, and go shopping. (Doc. 9-3 at 42-43) In addition, she said she did some household chores such as vacuuming, and washing dishes. (*Id.* at 43) Plaintiff estimated she watched television for "[s]ix to eight hours" each day. (*Id.*) She believed she was able to tolerate standing and walking for "maybe two hour[s]." (*Id.* at 44) Plaintiff said she would be unable to stand and walk for a total of six hours a

day because of the pain in her knees.  (*Id.*)  Plaintiff reported she would be able to sit for six hours a day "[i]f [she] could move around in the chair." (*Id.* at 45)  Also, Plaintiff believed she was able to lift up to forty pounds, because she could lift her grandson who weighed forty pounds.  (*Id.*)

Plaintiff testified that she stopped going to church about three months prior to the hearing because she was unable to sit still and "[s]tarted falling asleep." (Doc. 9-3 at 44)  Plaintiff stated she had difficulty concentrating, which she attributed to depression. (*Id.* at 47)  As an example, Plaintiff said she was unable to watch a two-hour movie or television program and maintain her concentration. (*Id.* at 48)  She reported she would "[h]ave to watch twice…[to] get the ending." (*Id.*)  Plaintiff estimated she would miss "[e]ight to ten days a month" from work due to her physical and mental impairments. (Doc. 9-3 at 47)

Vocational expert Jose Chaparro also testified at the hearing.  The VE reported Plaintiff's past relevant work as a security guard was classified as "light and semi-skilled" in the *Dictionary of Occupational Titles*.[1]  (Doc. 9-3 at 53)  However, the VE explained the job was "sedentary as [Plaintiff] performed the work." (*Id.*)

The ALJ asked the VE to consider a hypothetical individual who could "stand and/or walk two hours at a time and sit for six hours at a time" and "lift up to 40 pounds." (Doc. 9-3 at 53)  The VE opined a person with these limitations would be able to do Plaintiff's past work as a security guard as actually performed by Plaintiff, but not as generally performed in the economy.  (*Id.* at 54-55)  The VE explained the hypothetical worker could "do the world of unskilled sedentary work . . . [with] some erosion." (*Id.* at 55)  As examples of such work, the VE identified the following positions: addresser, *DOT* 209.587-010; Microfilm document preparer, *DOT* 294.587-010; and telephone quotation clerk, *DOT* 237.367-046.  (*Id.* at 55-56)

Next, the ALJ asked the VE to consider the same physical limitations with the addition that the person would "have bathroom breaks every hour" and "take naps during the day time lasting between one and two hours." (Doc. 9-3 at 57)  The VE opined there were not any jobs a person with these

---

[1] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).

limitations could perform. (*Id.*) Similarly, the VE testified an individual who would miss "approximately eight days per month" was precluded from work in the national economy. (*Id.*)

### C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial activity after the alleged disability date of December 31, 2011. (Doc. 9-3 at 19) Second, the ALJ found Plaintiff has the following severe impairments: "obesity, Grave's disease; and mood order with history of Drug/Alcohol Addition in remission since 2009." (*Id.*) At step three, the ALJ opined these impairments did not meet or medically equal a listed impairment. (*Id.* at 21) Next, the ALJ determined: "[T]he claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (*Id.*) With this residual functional capacity, the ALJ found was "capable of performing past relevant work as a security guard… as actually performed." (Doc. 9-3 at 24) In addition, the ALJ determined Plaintiff was able to perform "other jobs existing in the national economy." (*Id.*) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 24-25)

## DISCUSSION AND ANALYSIS

Plaintiff asserts the residual functional capacity assessment articulated by the ALJ fails to specifically describe her limitations. (Doc. 14 at 4-10) In addition, Plaintiff contends the ALJ erred in assessing the credibility of her subjective complaints, because the ALJ "accorded some weight to [the] testimony as to her abilities; yet does not explain why he rejects aspects [her] testimony which support her disability. (*Id.* at 10) On the other hand, Defendant argues that "[t]he ALJ sufficiently articulated the basis for the RFC and credibility determinations." (Doc. 15 at 4, emphasis omitted)

### A. The ALJ's Credibility Determination

When evaluating a claimant's credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Next, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility. *Id.* at 1036. In this case, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be

expected to cause some [of] the alleged symptoms." (Doc. 9-3 at 23) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible." (*Id.*)

The ALJ must base the adverse credibility determination on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Factors the ALJ may consider include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). To support a credibility determination, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Here, the ALJ considered the Plaintiff's "admitted activities," the treatment she received, and the objective medical evidence. (*See* Doc. 9-3 at 23) The Ninth Circuit has determined these may be relevant factors in assessing the credibility of a claimant.

1.   Treatment received

In assessing Plaintiff's credibility about her symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. §§ 404.1529(c), 416.929(c). Thus, the Ninth Circuit has determined the treatment a claimant received is a legitimate consideration in a credibility finding. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged as part of the credibility analysis); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (an "ALJ is permitted to consider lack of treatment in his credibility determination").

Here, the ALJ noted that Plaintiff was receiving treatment her thyroid condition, she testified

the "medications helped control her psychiatric symptoms, and symptoms from hypertension and thyroid problems." (Doc. 9-3 at 23) Further, the ALJ found the prescribed medications controlled Plaintiff's thyroid problem more than she admitted. (*Id.*) (citing Doc. 9-8 at 102) Indeed, as the ALJ noted, both Drs. Yusufzie and Bailey found Plaintiff's thyroid levels were "normal and well controlled with medication." (*Id.* at 22-23; *see also* Doc. 9-8 at 63, 102) Notably, when an impairment "can be controlled effectively with medication," it cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Consequently, the treatments given to Plaintiff support the ALJ's adverse credibility determination.

### 2. Inconsistencies with the medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

However, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible").

In this case, the ALJ acknowledged that Plaintiff had an "enlarged thyroid with significant

thyromegaly…and abnormal thyroid levels have been reported." (Doc. 9-3 at 22, citations omitted) However, the ALJ observed the "laboratory findings also indicate[d] numerous normal thyroid level tests." (*Id.*) In addition, the ALJ noted that Dr. Yusfuzie found Plaintiff's "thyroid levels [were] normal and well controlled with medication." (*Id.*) The ALJ also noted the physician found Plaintiff's "[r]anges of motion of the neck, back, and extremities, including the knees, were within normal limits, and motor strength, sensation, and reflexes were also normal." (*Id.*)

Similarly, the ALJ found Plaintiff's complaints of disabling mental impairments and an inability to concentrate were inconsistent with the medical record. (Doc. 9-3 at 20-21) Specifically, the ALJ observed: "The claimant alleged an inability to focus and think, but psychiatric consultative examiner Aimee Riffel, Ph.D., reported in August 2011 that [Plaintiff] had no impairment." (*Id.* at 20) As noted by the ALJ, "Dr. Riffel found no evidence of limitation due to mental impairments or symptoms." (*Id.*) The ALJ also noted this opinion was shared by Dr. Millican, who believed Plaintiff's "symptoms appeared to be situational and nonsevere." (*Id.* at 21)

Because the ALJ carried his burden to identify evidence in the record— including the opinions of several physicians who opined Plaintiff did not have disabling physical or mental impairments—the objective medical record supports the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may consider "contradictions between claimant's testimony and the relevant medical evidence").

3.   Daily activities

When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Fair*, 885 F.2d at 603). For example, a claimant's ability to cook, clean, and manage finances may be sufficient to support an adverse finding find of credibility. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). An ALJ may also conclude "the severity of . . . limitations were exaggerated" when a claimant exercises, gardens, and participates in community activities. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Here, the ALJ considered Plaintiff's activities—which included preparing food in the

microwave, shopping, loading /unloading the dishwasher, vacuuming, and watching television —and concluded her activities were inconsistent with her complaints of disabling impairments. (*See* Doc. 9-3 at 23) However, the ALJ failed to find Plaintiff's activities could be transferred to a work setting, or state Plaintiff spent a "substantial" part of her day engaged in such activities. Moreover, the Ninth Circuit opined, "Daily household chores and grocery shopping are not activities that are easily transferable to a work environment." *Blau v. Astrue*, 263 Fed. App'x 635, 637 (9th Cir. 2008). Thus, Plaintiff's activities of daily living were not clear and convincing evidence to discount her credibility. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (limited activities did not constitute convincing evidence that the claimant could function regularly in a work setting).

Regardless, the ALJ met his burden to identify other clear and convincing reasons supporting the adverse credibility determination, which were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. As such, the flawed analysis regarding Plaintiff's daily activities was a harmless error, because it "does not negate the validity of the ALJ's ultimate credibility conclusion." *Carmickle*, 533 F.3d at 1160 (quoting *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004).

### B. The ALJ's Residual Functional Capacity Assessment

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g., Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

Here, the ALJ found Plaintiff "has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a))." (Doc. 9-3 at 21) Pursuant to the Regulations: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often

necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a)). "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s)." Social Security Ruling[2] 96-9p, 1996 WL 374185 at *1.

When, as here, an ALJ defines a claimant's RFC as "less than the full range of sedentary work," SSR 96-9p provides guidance to the ALJ for determining the extent to which the sedentary occupational base has been eroded. For example, where a claimant is limited in her ability to stand or walk, as Plaintiff testified, SSR 96-9p, provides:

> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours in an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

1996 WL 374185 at *6. Plaintiff asserts the ALJ failed to comply with SSR 96-9p, which requires "a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." (Doc. 14 at 7) According to Plaintiff, "the ALJ's residual functional capacity assessment fails to explain or account how and why the sedentary level of exertion is limited such to prevent the performance of a full range of sedentary work." (*Id.*)

Importantly, despite the lack of objective evidence, the ALJ gave Plaintiff the benefit of the doubt by incorporating limitations to which she testified. Although the RFC does not identify limitations with sitting, standing, or walking, the discussion concerning the RFC makes clear the ALJ adopted Plaintiff's reported limitations, because the ALJ notes: "The claimant testified she could stand or walk 2 hours in an 8-hour workday, sit 2 hours at a time, and for a total of 6 hours in an 8-hour

---

[2] Social Security Rulings (SSR) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see also Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) ("SSRs reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations").

workday. She is able to lift her 40-pound grandson." (Doc. 9-3 at 23) In compliance with SSR 96-9p, the ALJ called upon a vocational expert to determine the extent to which the sedentary occupational base would be eroded with these limitations. (*See id*. at 24-25, 53-55)

When eliciting testimony from a vocational expert, the ALJ must set forth "hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). Only limitations supported by substantial evidence must be included. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that the claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the "weight of the medical evidence supports the hypothetical questions posed," the ALJ's findings will be upheld by the court. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *see also Gallant*, 753 F.2d at 1456.

Plaintiff contends that the ALJ erred by relying upon the vocational expert testimony because the ALJ did not include Plaintiff's statement that she could sit for six hours "if [she] could move around in the chair" or may miss eight to ten days a month of work. (Doc. 15 at 9) However, there is no evidence to support the assertions that Plaintiff could only sit for this amount of time when able to move in her chair or miss several day of work, and the ALJ concluded that Plaintiff's complaints regarding her physical impairments lacked credibility. Consequently, the ALJ was not required to incorporate these assertions into the RFC or the questions posed to the vocational expert.

Regardless, substantial evidence supports the RFC determination and the ALJ's conclusion that Plaintiff is able to perform work in the national economy despite her alleged physical impairments. Dr. Yusufzie examined Plaintiff and concluded she had no limitations with standing, walking, or sitting. (Doc. 9-8 at 63) In addition, Dr. Yusufzie determined Plaintiff's motor strength was 5/5 and she did not have "[l]ifting and carrying, postural, manipulative, relevant visual, communicative or workplace environmental limitations." (*Id.* at 62, 63) When the opinions of a physician, such as Dr. Yusufzie, "rest[] on independent examination," the opinions are substantial evidence in support of an

ALJ's decision. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence). Likewise, the opinions of Drs. Frankel and Bailey—who opined Plaintiff did not have disabling physical impairments—are substantial evidence because they are consistent with the opinion of Dr. Yusufzie. *See Tonapetyan*, 242 F.3d at 1149. Accordingly, the ALJ's conclusions that Plaintiff is able to perform her past relevant work and other work in the national economy is supported by substantial evidence in the record.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ set forth clear and convincing reasons for finding Plaintiff lacked credibility, and the RFC determination is supported by substantial evidence in the record. Consequently, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court. *Sanchez*, 812 F.2d at 510.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Lori Werlein.

IT IS SO ORDERED.

Dated:     **January 4, 2016**                    /s/ Jennifer L. Thurston
                                                  UNITED STATES MAGISTRATE JUDGE